## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DISCOVER GROWTH FUND, LLC,

    Plaintiff,

vs.

ANTHONY FIORINO, M.D.; DANIEL
KAZADO; DANIEL TEPER, M.D.; JEFFREY
PALEY, M.D.; JOHN NECZESNY; THE
ESTATE OF GARY H. RABIN; and JOHN
DOE 1-10 and JANE DOE 1-10,

    Defendants.

Civil Action No. 2:20-cv-00351 (CCC) (MF)

**Return Date:  May 4, 2020**

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
## DISMISS PLAINTIFF'S CORRECTED AMENDED COMPLAINT

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
John E. Jureller, Jr.
Lauren C. Kiss

*Attorneys for Defendants Anthony Fiorino, M.D.,*
*Daniel Teper, M.D., Jeffrey Paley, M.D.,*
*John Neczesny and Daniel Kazado*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 5

    A.  Immune and Immune Sub ................................................................................ 5

    B.  The Securities Purchase Agreement Transaction ........................................... 7

    C.  Bankruptcy Cases ........................................................................................... 8

    D.  License Agreement with Vector Therapeutics, Inc. for Ceplene Assets ....................... 8

    E.  Debtors' Sale of Bert and Other Anti-Eotaxin Assets ................................................. 10

STANDARD OF REVIEW .............................................................................................. 12

ARGUMENT ................................................................................................................... 13

    I.      THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT
          FAILS TO ALLEGE FACTS THAT PLAUSIBLY SHOW ANY CLAIM TO
          RELIEF AGAINST DEFENDANTS ................................................................. 13

    II.     DISCOVER'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED FOR
          FAILURE TO PLEAD WITH PARTICULARITY, AND FOR PLEADING
          GROUP CONDUCT .......................................................................................... 16

    III.    DISCOVER'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED
          BECAUSE DEFENDANTS DID NOT OWE DISCOVER ANY DUTY TO
          DISCLOSE INFORMATION ............................................................................ 19

    IV.    DISCOVER'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE
          DISMISSED ...................................................................................................... 21

          A.  Discover Cannot Allege Defendants Owed It a Fiduciary Duty .................... 21

          B.  Discover Lacks Standing to Bring a Breach of Fiduciary Duty Claim ........... 23

          C.  The Breach of Fiduciary Duty Claims Fail Because Immune's
              Certificate of Incorporation Eliminated Fiduciary Duties ............................. 25

i

V.     THE BANKRUPTCY COURT'S ORDER APPROVING THE CEPLENE
       LICENSE BARS THE TORTIOUS INTERFERENCE CLAIM ON RES
       JUDICATA AND COLLATERAL ESTOPPEL GROUNDS ..............................26

VI.    DISCOVER'S SECURITIES FRAUD CLAIM SHOULD BE DISMISSED ON
       STANDING AND RIPENESS GROUNDS .........................................................28

VII.   ALL CLAIMS AGAINST DEFENDANT TEPER SHOULD BE DISMISSED
       BECAUSE HE WAS NOT A DIRECTOR OR OFFICER AT THE TIME OF
       THE EVENTS AT ISSUE ...................................................................................30

CONCLUSION.................................................................................................................31

# **TABLE OF AUTHORITIES**

*Cases:*

*Acacia Invs., B.S.C.(C) v. W. End Equity I, Ltd.*,
　　161709/2018, 2020 WL 809721 (N.Y. Sup. Ct. Feb. 18, 2020)...........................................23

*Alin v. Am. Honda Motor Co., Inc.*,
　　No. 08-4825 (KSH), 2010 WL 1372308 (D.N.J. Mar. 31, 2010)..........................................20

*Allstate New Jersey Ins. Co. v. Lajara,* 222 N.J. 129, 117 A.3d 1221 (2015)..............................13

*Andrea v. Metro Life Ins. Co.*,
　　No. 2:00-CV-911, 2000 WL 35361960 (D.N.J. Aug. 14, 2000) ...........................................14

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009) ........................................13, 14

*Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016)......................................19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...............................12

*Auriga Capital Corp. v. Gatz Props.*,
　　40 A.3d 839 (Del. Ch. 2012),
　　*aff'd sub nom. Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206 (Del. 2012) ....22, 23

*Basic, Inc. v. Levinson,* 485 U.S. 224, 239 n. 17, 108 S. Ct. 978, 99 L. E. 2d 194 (1988)...........20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............12

*Berman v. Gurwicz*, 189 N.J. Super. 89 (Ch. Div. 1981) .............................................................14

*Blue Chip Stamps v. Manor Drug Stores*,
　　421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975).........................................................29

*Continuing Creditors' Comm. of Star Telecommunications, Inc. v. Edgecomb*,
　　385 F. Supp. 2d 449 (D. Del. 2004).......................................................................................26

*Dare Invs., LLC v. Chicago Title Ins. Co.*,
　　No. 10-6088 (DRD), 2011 WL 2600594 (D.N.J. June 29, 2011).....................................14, 15

*Davis v. Bankers Life & Cas. Co.*,
　　No. Civ. Action No. 15-3559 (ES) (JAD), 2016 WL 7668452 (D.N.J. Dec. 23, 2016)..........14

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016)......................................................................30

*Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567 (3d Cir. 2002) .......................27

*Duhaney v. Attorney General of U.S.*, 621 F.3d 340 (3d Cir. 2010) ..............................................27

*Edgar v. MITE Corp.,* 457 U.S. 624, 102 S. Ct. 2629, 73 L. Ed .2d 269 (1982)..........................21

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998) ...............................................17

*Fagin v. Gilmartin*, 432 F.3d 276 (3d Cir. 2005) ...............................................................................21

*Frederico v. Home Depot,* 507 F.3d 188 (3d Cir. 2007) .....................................................................17

*Fry v. Trump*, 681 F. Supp. 252 (D.N.J. 1988).............................................................................21, 22

*GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA,*
    Civil Action No. 09-4656 (JLL), 2010 WL 2179094 (D.N.J. May 26, 2010)........................17

*Henderson v. Volvo Cars of N. Am., LLC,*
    Civ. No. 09-4146 (DMC)(JAD), 2010 WL 2925913 (D. N.J. July 21, 2010) ........................19

*In re Farmland Indus.,* Inc.,
    376 B.R. 718 (Bankr. W.D. Mo. 2007)
    *aff'd* 408 B.R. 497 (B.A.P. 8th Cir. 2009)
    *aff'd* 639 F.3d 402 (8th Cir. 2011).....................................................................................27, 28

*In re G-I Holdings, Inc.*, 755 F.3d 195 (3d Cir. 2014)..................................................................23, 24

*In re House of Drugs, Inc.*, 251 B.R. 206 (Bankr. D.N.J. 2000) ......................................................14

*In re Ikon Office Sols., Inc.*, 277 F.3d 658 (3d Cir. 2002) ...............................................................29

*In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529 (D.N.J. 2002) ......................................20

*In re Midway Games Inc.*, 428 B.R. 303 (Bankr. D. Del. 2010) .....................................................26

*In re Mullarkey*, 536 F.3d 215 (3d Cir. 2008) ..................................................................................27

*In re RNI Wind Down Corp.*,
    348 B.R. 286 (Bankr. D. Del. 2006),
    *subsequently aff'd*, 359 F. App'x 352 (3d Cir. 2010) ............................................................24

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) .....................................17

*In re SFBC Int'l, Inc. Sec. & Derivative Litig.*, 495 F. Supp. 2d 477 (D.N.J. 2007)....................25

*In re Tropicana Entertainment, LLC*, 520 B.R. 455 (Bankr. D. Del. 2014)................................22

*In re USDigital, Inc.*, 443 B.R. 22 (Bankr. D. Del. 2011) ..............................................................26

*John Hancock Mut. Life. Ins. Co. of Boston, Mass. v. Cronin,*
139 N.J. Eq. 392, 51 A.2d 2 (1947) .................................................................................14

*Jubelt v. United N. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227 (D.N.J. June 30, 2015) .......17

*Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366 (D.N.J. 2006).....13

*Krys v. Aaron*, 106 F. Supp. 3d 472 (D.N.J. 2015) ......................................................................21

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)............................................19, 20

*Martinez v. Bank of America, N.A.,* 664 F. App'x 250 (3d Cir. 2016) ...........................................6

*McMahon v. New Castle Assocs.*, 532 A.2d 601 (Del. Ch. 1987) .................................................23

*Medical Society of New Jersey v. Herr*, 191 F. Supp. 2d 574 (D.N.J. 2002) .........................29, 30

*Metro Ambulance, Inc. v. E. Med. Billing, Inc.*,
Civ. A. No. 13929, 1995 WL 409015 (Del. Ch. July 5, 1995)................................................23

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)......................................................17

*Mitchell Excavators Inc. v. Mitchell*, 734 F.2d 129 (2d Cir. 1984)........................................24, 25

*New Jersey Econ. Dev. Auth. v. Pavonia Rest., Inc.*,
319 N.J. Super. 435, 725 A.2d 1133 (App. Div. 1998) ...................................................20, 21

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
930 A.2d 92 (Del. 2007) .......................................................................................................23

*North Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.,*
515 F. App'x 176 (3d Cir. 2013) ...........................................................................................21

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ...............6

*Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998) .......................................30

*Prestancia Mgmt. Group, Inc. v. Va. Heritage Found., II LLC,*
No. Civ. A. 1023-S, 2005 WL 1364616 (Del.Ch. May 27, 2005)...........................................23

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492 (D.N.J. 2014)..............17

*RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436 (D.N.J. 2012) ..........................13

*Roll v. Singh,*
Civil Action No. 07-cv-04136 (FLW), 2008 WL 3413863 (D.N.J. June 26, 2008)..........13, 17

*S. Broward Hosp. Dist. v. MedQuist Inc.*,
    516 F. Supp. 2d 370 (D.N.J. 2007) *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007)...............20

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 788 A.2d 268 (2002) .....................................19, 20

*Sani-Pure Food Labs., LLC v. bioMerieux, Inc.*,
    Civil Action No. 13-6643 (ES), 2014 WL 6386803 (D.N.J. Nov. 13, 2014) .........................17

*Santiago v. Warminster Tp.*, 629 F.3d 121 (3d Cir. 2010) ...........................................................12

*Skolnick v. Atlantic Gulf Communities Corp. (In re Gen. Development Corp.)*,
    179 B.R. 335 (S.D. Fla. 1995) ....................................................................................24, 25

*Texas v. United States*, 523 U.S. 296, 118 S. Ct. 1257 (1998) ......................................................30

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031 (Del. 2004)..................................24

*United Jersey Bank v. Kensey*, 306 N.J. Super 540 704 A.2d 38 (App. Div. 1997) ....................20

*Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 901 A.2d 106 (Del. 2006) ........................................22

*Walzer v. Muriel, Siebert & Co., Inc.*, 221 Fed. Appx. 153 (3d Cir. 2007)..................................26

*York Lingings v. Roach,* No. 16622-NC, 1999 WL 608850 (Del. Ch. July 28, 1999) .................22

**Other Authorities:**

11 U.S.C. § 541..............................................................................................................................24

15 U.S.C. § 78j(b) ..........................................................................................................................29

17 C.F.R. § 240...............................................................................................................................29

Delaware General Corporate Law § 102(b)(7) ...............................................................................25

Federal Rules of Civil Procedure 9(b) ................................................................................2, 16, 17

Federal Rules of Civil Procedure 12(b)(1).............................................................................1, 29, 30

Federal Rules of Civil Procedure 12(b)(6)........................................................................1, 26, 29, 30

Federal Rules of Civil Procedure 56 ..............................................................................................30

Securities Exchange Act of 1934 § 10(b) .......................................................................................29

Securities Exchange Act of 1934 § Rule 10b-5 ..............................................................................29

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), Defendants Anthony Fiorino, M.D. ("Fiorino"), Daniel Teper, M.D. ("Teper"), Jeffrey Paley, M.D. ("Paley"), John Neczesny ("Neczesny") and Daniel Kazado ("Kazado") (Fiorino, Teper, Paley, Neczesny, and Kazado together, the "Defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss Discover Growth Fund, LLC's ("Discover" or "Plaintiff") corrected amended complaint (the "Amended Complaint").[2]

## PRELIMINARY STATEMENT

The Amended Complaint must be dismissed because it fails to allege facts that plausibly show that Defendants—officers and directors of non-party Immune Pharmaceuticals, Inc. ("Immune")—are somehow responsible for Discover's losses on financing provided to Immune. Most of the claims in this action rest on this core allegation: Discover, a sophisticated investor based in the Virgin Islands, incorrectly assumed that the rights to a pharmaceutical called bertilimumab ("Bert") were owned by Immune and were thus part of the collateral securing Discover's financing to Immune. In fact, those rights were held by a subsidiary of Immune, and were thus not part of the collateral. The Amended Complaint seeks to hold Defendants liable for Discover's failure to learn for itself that Bert was not owned by Immune, but does not allege any facts that would support this implausible case theory. Indeed, contracts and public filings referenced in the Amended Complaint establish that Discover could have and should have learned through basic due diligence that Immune did not have the rights to Bert.

---

[1] To date, the Estate of Gary Rabin has not yet been served with the Amended Complaint.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Complaint.

This action arises out of a securities purchase agreement between Discover and Immune, to which none of the Defendants was a party.  In exchange for what amounted to $2 million in funding to Immune,[3] Discover was granted a security interest in certain assets of Immune. Discover implausibly alleges that Defendants made unspecified representations to lead Discover to conclude that Immune itself had rights to Bert under a Sublicense Agreement, when in fact, the agreement plainly shows that the rights were owned by Immune's wholly-owned Israeli subsidiary, Immune Pharmaceuticals, Ltd. ("Immune Sub").  Nothing in the securities purchase agreement granted Discover a lien on any assets of Immune Sub.

The Amended Complaint alleges no facts that would plausibly satisfy the reliance element of the fraud-based claims against Defendants.  There are no allegations explaining how Discover's error results from anything except its own faulty due diligence.  Discover does not—and could not truthfully—allege that Defendants concealed the Sublicense Agreement or other documents evidencing Immune Sub's ownership of Bert from Discover during the due diligence process.  In fact, as the Amended Complaint alleges, the Sublicense Agreement was attached to Immune's 2014 10-K filing with the SEC, and was thus publicly available to Discover.  These glaring holes in Discover's factual allegations suggest that Discover's claimed losses resulted from its own inadequate due diligence.

Equally fatal, the Amended Complaint does not set forth any particular allegations about any Defendant's supposed misleading statements, as required by Rule 9(b); instead, Discover merely alleges vague and conclusory group conduct.  The Amended Complaint does not allege

---

[3] The Debtors and the Official Committee of Unsecured Creditors have disputed Discover's claim that this was a debt investment, instead arguing that it was an equity investment and must be subordinated to general unsecured creditors.  *See* Adversary Complaint, Adv. Pro. No. 19-02033 (VFP) (Bankr. D.N.J.).

that any Defendant made a specific misrepresentation to Discover, or that any Defendant prevented Discover from seeing documents showing that Immune Sub–and not Immune– held the Bert rights. In fact, there are no allegations that any Defendant was involved in the due diligence process at all.  And, in any case, it is not believable that all Defendants provided due diligence to Discover— particularly independent directors like Defendants Paley and Neczesny.

The Amended Complaint also fails to allege any facts which would show that any Defendant, as an officer or director of Immune, owed a duty to Discover to affirmatively point out that the Bert rights were not an asset of Immune.   This is fatal to all of the fraud-based claims.

Further, the Amended Complaint alleges that Defendants "relied upon emails from Teper [the founder of Immune] from some years earlier to the effect that, because Immune owned all the stock of [Immune Sub], Immune could pledge the [Immune Sub]-owned Collateral to a secured lender."  Am. Compl. ¶ 66.  This allegation effectively acknowledges that Defendants lacked the intent necessary to support claims sounding in fraud.

At best, the Amended Complaint alleges facts to support a claim for breach of contract against Immune.  Regardless whether Immune breached the securities purchase agreement, that is insufficient to make any of the officer or director Defendants liable to Discover.

In these circumstances, Discover has fallen well short of its obligation to plead facts to show that Defendants engaged in fraudulent conduct, negligent misrepresentation, or breach of fiduciary duty.  These defects cannot be cured on repleading:  Discover will not be able to explain away its own failures to conduct sufficient due diligence to understand that Immune did not have rights in the Bert intellectual property.

There are additional reasons why Discover's claims must be dismissed:

- Discover's breach of fiduciary duty claim should be dismissed because no facts are alleged that would show that any Defendant owed Discover a fiduciary duty—especially because Immune's certificate of incorporation eliminated fiduciary duties.

- Discover's tortious interference claim is barred by res judicata and collateral estoppel, in light of prior findings of the Bankruptcy Court in the Immune bankruptcy proceeding.

- Discover lacks standing to assert a securities fraud claim, and in any case, the claim is not ripe for adjudication because it is based on future events that may or may not occur.

- All claims against Defendant Teper should be dismissed because he was not an officer or director of Immune at the time of the events at issue.

Finally, this lawsuit appears to be an ill-conceived reaction to Discover's lack of success in the Immune bankruptcy proceeding. There, Discover filed a proof of claim for more than $14 million on a secured basis based on supposed losses from its $2 million loan to Immune.[4] Discover has pursued its claims with undue aggression, objecting to almost every application submitted by the Debtors. For the most part, those objections have been overruled. After it became clear that Discover's efforts to gain a windfall from the destruction of Immune's business would fail, Discover has filed these meritless claims in a desperate effort to extract money from the Defendants. What's more, it was the securities purchase transaction with Discover that starved Immune of cash, and directly led to Immune's bankruptcy filing just four months later.

For these reasons, detailed below, Discover's claims should be dismissed, with prejudice.

---

[4] The extent and validity of Discover's claim and accompanying lien is an issue currently pending before the Bankruptcy Court. Defendants reserve all rights with respect thereto.

## FACTUAL BACKGROUND

### A.      Immune and Immune Sub

Immune and its affiliates, including Immune Sub, are clinical stage biopharmaceutical companies, specializing in the development of novel targeted therapeutic agents in the fields of inflammation, dermatology, and oncology.  Immune and Immune Sub are currently debtors in possession in Chapter 7 cases, pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

In September 2018, Immune engaged Defendant Rabin as its financial consultant.  On March 6, 2019 until his death in December 2019 Defendant Rabin was Immune's President and Interim Chief Executive Officer.  Defendant Fiorino served as Immune's Chief Medical and Operating Officer from August 15, 2017 until his appointment as President and Interim Chief Executive Officer on August 28, 2018, positions he held until March 5, 2019.  Defendant Fiorino was a member of Immune's Board of Directors from August 28, 2019 to February 14, 2020.  Defendant Kazado has been a member of Immune's Board of Directors since October 2013.  Defendants Paley and Neczesny are independent directors of Immune, who never held officer positions.  Defendant Teper resigned as an officer of Immune in 2017, and as a director of Immune in or about May 2018.  *Id.*, ¶¶ 6-10.

Prior to the bankruptcy filings, Immune was delisted by Nasdaq on July 6, 2018 and began trading on the OTCQB; after the bankruptcy filings, Immune's stock has traded on the Pink Market operated by OTC.  *See* Bankr. Dkt. No. 46-1, ¶ 10, a copy of which is attached to the declaration of John E. Jureller, Jr. (the "Jureller Decl."), dated April 8, 2020, as Exhibit A.[5]

---

[5] "Bankr. Dkt. No." shall refer to the documents filed in the Bankruptcy Cases, which are jointly administered under Case No. 19-13273 (VFP).  "Adv. Proc. Dkt. No." shall refer to the documents filed in the adversary proceeding titled *Immune Pharmaceuticals Inc. et al. v. Discover Growth*

As of September 30, 2018, Immune did not have any self-developed or licensed products that were approved for sale by the United States Food and Drug Administration. *Id.*, ¶ 11.

The Debtors had two main product lines: (1) Bert, a first-in-class human, anti-eotaxin-1 antibody that targets eotaxin-1, a key regulator of inflammation, and (2) Ceplene®, a cancer drug approved (though with minimal sales) in the European Union. *See* Bankr. Dkt. No. 18, ¶¶ 15-17, a copy of which is attached to the Jureller Decl. as Exhibit B.

On December 7, 2010, Immune Sub and iCo Therapeutics Inc. ("iCo") entered into the Product Sublicense Agreement (the "Sublicense Agreement"), under which iCo granted Immune Sub exclusive sublicense rights with respect to identified intellectual property to develop and commercialize Bert for a defined field of use. *See* Sublicense Agreement, a copy of which is attached to the Jureller Decl. as Exhibit C.[6]

On February 15, 2019, iCo improperly attempted to terminate the Sublicense Agreement, on the grounds that, among other things, Immune supposedly subjected the intellectual property covered by the Sublicense Agreement to a security interest. *See* Am. Compl., ¶¶ 30, 34. However, the notice of default was improperly served upon Immune, the wrong entity, and thereafter deemed a nullity as a result of the bankruptcy filing by Immune Sub.[7] Moreover, iCo's alleged termination

---

*Fund, LLC*, Adv. Proc. No. 19-02033 (VFP). The court can consider the documents filed with the Bankruptcy Court as a matter of public record. *See Martinez v. Bank of America, N.A.,* 664 F. App'x 250, 254 n.7 (3d Cir. 2016).

[6] The Sublicense Agreement is incorporated by reference in the Amended Complaint, and may properly be considered on this motion to dismiss. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

[7] Discover has incorrectly relied upon iCo's improper notice of default in the Amended Complaint in asserting the claims for misrepresentation related to the Sublicense Agreement, all of which was corrected by the Bankruptcy Court's Sale Order (defined herein).

due to Immune's grant of its rights under the Sublicense Agreement to Discover is factually inaccurate because the Sublicense Agreement was with Immune Sub, not Immune, and, as a result, it was not subject to Discover's lien.  As set forth below, the Bankruptcy Court ultimately approved Immune's and its affiliated Debtors' motion to sell certain assets, inclusive of the assignment of the rights under the Sublicense Agreement with the consent of iCo, over the objection of Discover. *See* Bankr. Dkt. No. 343, a copy of which is attached to the Jureller Decl. as <u>Exhibit D</u>.

    **B.**       **The Securities Purchase Agreement Transaction**

       Prior to the bankruptcy filings, the Debtors needed capital to continue operations while seeking a commercial partner with adequate resources to support the development and commercialization of Bert and Ceplene.  *See* Adv. Proc. Dkt. No. 11, ¶ 6, a copy of which is attached to the Jureller Decl. as <u>Exhibit E</u>.

       On October 9, 2018, Immune and Discover entered into a securities purchase agreement (as amended from time to time, the "<u>Agreement</u>"), pursuant to which Immune sold to Discover $5.5 million in principal amount of Senior Secured Redeemable Debentures for $2 million in cash and a $3 million promissory note (reflecting a $500,000 original issue discount to Discover). Discover only provided Immune with $2 million, refusing to fund the remaining $3 million.

       At the time of the transaction, Discover was familiar with Immune.  Funds managed by Discover's advisor and managing member [Discover Fund Management LLLP] had invested $13 million in Immune over the last five years.  *See* Adv. Proc. Dkt. No. 11, ¶ 7.  In fact, Discover required that Immune use the structure (and draft) of its 2015 investment transaction documents in preparation of the securities purchase agreement documents.  *Id.*, ¶¶ 11-12, 14.

       The Agreement contained provisions granting Discover a first-priority security interest in all of Immune's assets, other than all tangible and intangible assets associated with the Ceplene®

product line ("Ceplene" or "Ceplene Assets").[8]  The Agreement did not say anything about a security interest in Bert, nor did it provide for a lien on any of the assets of Immune Sub or any other Immune affiliate.

### C.    Bankruptcy Cases

On February 17, 2019, approximately four months after the Agreement was signed, Immune filed a voluntary Chapter 11 petition with the Bankruptcy Court.  On February 22, 2019, Immune Sub filed its own voluntary Chapter 11 petition.[9]

To date, Discover has objected to almost every motion or application made by the Debtors, including the most mundane.  Almost all of Discover's objections have been overruled by the Bankruptcy Court.

On April 2, 2020, upon the application of Discover for an order pursuant to 11 U.S.C. § 1112(b) converting the Bankruptcy Cases, the Bankruptcy Court entered an order converting the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.

### D.    License Agreement with Vector Therapeutics, Inc. for Ceplene Assets

On March 15, 2019, the Debtors filed a motion (the "Ceplene Sale Motion") with the Bankruptcy Court seeking approval to sell Immune's Ceplene Assets to Vector Therapeutics, Inc. (f/k/a Oxygen Therapy Inc.) ("Vector").  *See* Bankr. Dkt. No. 46, a copy of which is attached to the Jureller Decl. as Exhibit F.  Defendant Teper, who resigned as a director of Immune in May 2018, was a member of Vector's Board of Directors at the time.

---

[8] The Agreement provided that the Ceplene Assets shall not be deemed to constitute collateral unless Immune has not closed a transaction involving the sale, license, divestment or partnering of the Ceplene Assets on or before March 31, 2019.  *See* Agreement, Exhibit 1.

[9] On February 26, 2019, other Immune subsidiaries (collectively, the "Subsidiaries" and together with Immune and Immune Sub, the "Debtors") filed their own Chapter 11 petitions with the Bankruptcy Court (collectively, these Chapter 11 cases are the "Bankruptcy Cases").

On March 29, 2019, the Bankruptcy Court held a hearing to consider the Ceplene Sale Motion, at which time Immune requested an extension of the Ceplene Sale Motion and informed the Bankruptcy Court that Immune intended to enter into a license agreement with Vector.  On March 30, 2019, Immune and Vector entered into a license agreement (the "Ceplene License") which granted Vector an exclusive, non-transferable license to use the Ceplene Assets.  Under the Ceplene License, Vector agreed to pay Immune $100,000 for a thirty-day license, subject to renewal.

On April 16, 2019, Discover filed a motion with the Bankruptcy Court seeking a determination that (i) the Ceplene License is out of the ordinary course of the Debtors' business and is thus void *ab initio* and (ii) the Ceplene Assets are subject to Discover's first priority lien and security interest (the "Priority Lien Motion").  *See* Bankr. Dkt. No. 143, a copy of which is attached to the Jureller Decl. as Exhibit G.  In the Priority Lien Motion, Discover disputed the validity of the Ceplene License, characterizing it as "a tourniquet applied in an attempt to save the proposed sale to an inside buyer" and an attempt by Immune to "cobble together a sham 'license' to frustrate Discover's lien rights simply because Vector failed to show up at the Sale Hearing with money."  Priority Lien Motion, ¶¶ 28, 31.

In response, on April 23, 2019, the Debtors filed an opposition to the Priority Lien Motion and a cross-motion to approve the Ceplene License nunc pro tunc to March 30, 2019 (the "License Approval Motion")*.  See* Bankr. Dkt. No. 151, a copy of which is attached to the Jureller Decl. as Exhibit H.  In the License Approval Motion, Immune asserted that the Ceplene License was entered in the ordinary course of Immune's business.  Alternatively, Immune requested that the Bankruptcy Court approve the Ceplene License nunc pro tunc to March 30, 2019.

On April 25, 2019, Discover filed a reply memorandum in further support of its Priority Lien Motion and in opposition to the License Approval Motion (the "Discover Opposition"). *See* Bankr. Dkt. No. 157, a copy of which is attached to the Jureller Decl. as Exhibit I. The Discover Opposition asserted that (i) the Ceplene License was not in the ordinary course of Immune's business, and (ii) nunc pro tunc approval of the Ceplene License was improper where it served to defeat Discover's lien rights as a secured creditor. In particular, Discover contended that the Ceplene License should be subjected to heightened scrutiny because of Defendant Teper's alleged insider status.

On August 21, 2019, after a hearing on the Priority Lien Motion and License Approval Motion, the Bankruptcy Court issued an order authorizing Immune to enter into the Ceplene License with Vector, nunc pro tunc to March 30, 2019 (the "License Approval Order"). *See* Bankr. Dkt. No. 297, a copy of which is attached to the Jureller Decl. as Exhibit J.

### E.    Debtors' Sale of Bert and Other Anti-Eotaxin Assets

As part of the bankruptcy process, the Debtors sought to sell their assets, including the "Anti-Eotaxin Assets" comprised of Bert, owned by Immune Sub, and other anti-eotaxin-1 antibody assets in the program owned by Immune, including the anti-eotaxin-1-COH.

On July 1, 2019, the Debtors filed a motion seeking, among other things, to sell the Anti-Eotaxin Assets to Alexion Pharmaceuticals, Inc. ("Alexion") for $6 million, subject to higher or better offers. *See* Bankr. Dkt. No. 219, a copy of which is attached to the Jureller Decl. as Exhibit K. Included as part of the Anti-Eotaxin Assets was the Sublicense Agreement between iCo and Immune Sub.

Since the Sublicense Agreement was an asset of Immune Sub, it was understood that any sale of the Anti-Eotaxin Assets would require coordination between the Bankruptcy Court and the

Israeli Court, and the consent of iCo if the Sublicense Agreement was to be assumed and assigned as part of the sale transaction.[10]

On October 21, 2019, the Bankruptcy Court approved the sale of the Anti-Eotaxin Assets to Alexion for $6 million (the "Sale Order").  *See* Bankr. Dkt. No. 343, Exhibit D to Jureller Decl.

Over Discover's objection, on October 23, 2019, the Bankruptcy Court approved a memorandum of understanding, which provided that 50% of the gross sale proceeds of the Anti-Eotaxin Assets would be held in trust by the Official Receiver in the Israeli proceeding and the remaining 50% would be held in trust by Debtors' counsel.  *See* Bankr. Dkt. No. 345, a copy of which is attached to the Jureller Decl. as Exhibit L.  The Sale Order expressly provides that "Discover Growth Fund may assert any of its Claims, Encumbrances, Interests, Liabilities and liens against the proceeds of the Sale Transaction wherever located, deposited, escrowed, or otherwise held or transferred."  *See* Sale Order, ¶ 9.

As a result, the Official Receiver received $3 million of the proceeds from the sale of the Anti-Eotaxin Assets.  This litigation is the direct result, as Discover claims that "$3 million of what should have been Discover's cash Collateral has been alienated to a foreign country, and is likely unavailable to satisfy Discover's secured claim."  Am. Compl., ¶ 63.

Having struck out in Bankruptcy Court, Discover has filed this lawsuit in an attempt to bully Defendants into paying a grossly inflated damages amount:  While Discover provided only $2 million in financing to Immune just four months prior to the bankruptcy filing, Discover seeks to recover damages in this action that would exceed $14.85 million.

---

[10] The Sublicense Agreement provides that "this Agreement shall not be assignable by either Party without the written consent of the other Party, such consent not to be unreasonably withheld." Sublicense Agreement, § 18.1.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  While a court must accept as true all of the factual allegations in the complaint, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

In assessing a complaint in connection with a motion to dismiss, the Third Circuit has instructed courts to undertake a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Tp.*, 629 F.3d 121, 129 (3d Cir. 2010) (internal citations, quotation marks, and alterations omitted).

## ARGUMENT

**I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE FACTS THAT PLAUSIBLY SHOW ANY CLAIM TO RELIEF AGAINST DEFENDANTS.**

The Amended Complaint alleges no facts plausibly showing that Defendants engaged in any misrepresentation or omission of fact regarding the designated collateral under the Agreement that could give rise to liability under any of the asserted claims.   In particular, the Amended Complaint does not allege facts to explain how Defendants, and not Discover, could be responsible for Discover failing to learn key facts in the course of its own due diligence.   At most, the Amended Complaint alleges facts showing that Immune breached the Agreement (*see, e.g.*, Am. Compl., ¶¶ 35-36, 41, 46-47), but those allegations do not give rise to claims against Defendants.

Reliance is a necessary element of Discover's fraud, fraud in the inducement, negligent misrepresentation, and securities fraud claims.[11]   Reliance must be reasonable, and will not be found where plaintiff failed to conduct a reasonable investigation.   *See, e.g.*, *Arcand v. Brother*

---

[11] *See, e.g.*, *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 147, 117 A.3d 1221, 1231 (2015) ("The elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) *reasonable reliance thereon by the other person*; and (5) resulting damages.") (emphasis added) (internal citations omitted); *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) ("In order to establish a claim for fraudulent inducement, five elements must be shown: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) *resulting in reliance by that party*; (5) to his detriment.") (emphasis added) (citations omitted); *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (Under New Jersey law, to state a claim for negligent misrepresentation, a plaintiff must allege "an incorrect statement, negligently made and *justifiably relied on*, which results in economic loss.") (emphasis added) (quotation omitted); *Roll v. Singh*, Civil Action No. 07-cv-04136 (FLW), 2008 WL 3413863, at *6 (D.N.J. June 26, 2008) ("The Supreme Court and Third Circuit have identified the six required elements of a Section 10(b) action: (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) *reliance*[ ]; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss.") (emphasis added) (internal citations omitted).

*Int'l Corp.*, 673 F. Supp. 2d 282, 305-06 (D.N.J. 2009) ("A party reasonably relies on a misrepresentation where the 'facts to the contrary were not obvious or did not provide a warning,' or where the relying party did not reasonably 'pursue further investigation' that would have revealed 'the falsity of the representation.'") (internal citations omitted); *Davis v. Bankers Life & Cas. Co.*, No. Civ. Action No. 15-3559 (ES) (JAD), 2016 WL 7668452, at *6 (D.N.J. Dec. 23, 2016) ("Assuming that [plaintiff] can establish four of the five elements of a fraud claim, the Court finds that [plaintiff] cannot set forth sufficient facts for the Court to infer the remaining element— reasonable reliance. [Plaintiff] claims that he 'reasonably relied' on [defendant's] statement that was contradictory to the [insurance policy] . . . . The law is clear, however, that reasonable reliance on a prior oral representation cannot be established in the face of clear contradictory language in an insurance policy.") (citations omitted); *Andrea v. Metro Life Ins. Co.*, No. 2:00-CV-911, 2000 WL 35361960, at *4 (D.N.J. Aug. 14, 2000) (dismissing fraud claim after finding that "[plaintiff] cannot establish that he reasonably relied on [defendant's] representations in light of the clear contradictory language of the Policy.").

Further, under New Jersey law, when a party chooses to conduct its own investigation or due diligence, it "will be accountable for everything such party could have discerned by employing reasonable diligence." *In re House of Drugs, Inc.*, 251 B.R. 206, 211 (Bankr. D.N.J. 2000) (citing *John Hancock Mut. Life. Ins. Co. of Boston, Mass. v. Cronin*, 139 N.J. Eq. 392, 398, 51 A.2d 2 (1947)); *see also Berman v. Gurwicz*, 189 N.J. Super. 89, 102-03 (Ch. Div. 1981) (finding that plaintiffs could not prove reliance because "[p]laintiffs who were represented by counsel either made or should have made an independent investigation of the facts through their attorneys."); *Dare Invs., LLC v. Chicago Title Ins. Co.*, No. 10-6088 (DRD), 2011 WL 2600594, at *7 (D.N.J.

14

June 29, 2011) (dismissing fraud claims where, among other things, the information that the defendants allegedly withheld were accessible through documentary evidence in the record).

All of Discover's claims in this action (except tortious interference) are all based on the following allegation:

> The Director and Officer Defendants misrepresented and/or failed to disclose accurately to Discover material facts concerning the ownership of the Collateral, Immune's true ability to pledge the same, Immune's intent to defend Discover's interests, and the fact that the pledge of the Collateral under the Debt Documents would trigger iCo's Termination of the License.

Am. Compl., ¶¶ 93, 99, 105; *see also id.*, ¶¶ 112, 138.  Critically absent is any allegation explaining how Discover could have relied on these supposed misrepresentations or omissions.

Under the Agreement, Immune granted Discover a security interest only in certain of its own assets, and not in assets owned by any of its subsidiaries.  *See* Agreement, Article V & Ex. 1 (definition of "Collateral").  The Sublicense Agreement, on its face, establishes that the rights to Bert are owned by Immune Sub, not by Immune.[12]  Discover does not allege any facts that would possibly indicate that Defendants prevented Discover from learning that Bert was not an asset of Immune's.  In fact, the Amended Complaint concedes that the Sublicense Agreement was publicly available prior to the time that Discover extended financing to Immune.  Am. Compl., ¶ 31.

Additionally, pursuant to the IP Security Agreement between Immune and Discover, Immune granted to Discover "a security interest in all of [Immune's] right, title and interest in, to and under . . . each patent and patent application referred to on <u>Schedule A</u>."  Listed under the "Bertilimumab Patent Family" on Schedule A are nine patents and/or patent applications which

---

[12] Discover incorrectly alleges that the Sublicense Agreement was between iCo and *Immune*, and that the Sublicense Agreement was included in the Agreement's definition of Collateral.  Am. Compl., ¶ 31.  It is clear from the first page of the Sublicense Agreement that it was between iCo and "Immune Pharmaceuticals Ltd.," which is the name of Immune Sub; Immune itself is not a party to the Sublicense Agreement.  *See* Sublicense Agreement, p. 1.

are described as "PATENTS AND PATENT APPLICATIONS FILED UNDER IMMUNE PHARMA LTD (OWNER)."  IP Security Agreement, p. 6.  Discover was thus on notice of Immune Sub's ownership of the Bert patents.  Discover acknowledges that it does not have a lien on or security interest in the assets of Immune Sub.  *See* Am. Compl., ¶ 61.

Against this backdrop, Discover's conclusory allegations of reliance are simply not plausible, and the claims requiring reliance as an element must be dismissed.

Moreover, Discover's allegations regarding the iCo notice of default are misplaced.  There is no dispute that iCo's service of the notice of default under the Sublicense Agreement upon Immune was incorrect.  iCo ultimately attempted to re-serve the notice upon Immune Sub, the correct party, but such service was barred by the automatic stay.  Even so, the Sublicense Agreement did provide a mechanism for the assignment of the Sublicense Agreement.  *See* Sublicense Agreement, § 18.  Ultimately, the Bankruptcy Court entered the Anti-Eotaxin Sale Order, authorizing the sale of the Bert assets, including the assignment of the Sublicense Agreement between iCo and Immune Sub, and the disbursement of the 50% of the funds to the Official Receiver in the Israeli proceeding.  As such, the underlying facts that Discover relies upon for its alleged misrepresentation and omission claim against Defendants are incorrect, all of which have been confirmed by the Bankruptcy Court over Discover's objections.

## II.    DISCOVER'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD WITH PARTICULARITY, AND FOR PLEADING GROUP CONDUCT.

Discover's fraud-based claims should be dismissed for the additional reason that they fail to meet the particularity requirements of Rule 9(b), and because they improperly plead group conduct, without specifying conduct or statements by individual Defendants.  Further, the fraud claims are based on allegations that the Amended Complaint concedes are inaccurate.

Claims sounding in fraud—including fraud in the inducement, negligent misrepresentation, breach of fiduciary duty and securities fraud claims—must be pleaded with particularity regarding the circumstances. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (noting that where "plaintiff grounds [his claims] in allegations of fraud – and the claims thus 'sound in fraud' – the heightened pleading requirements of Rule 9(b) apply").[13] Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged and to prevent false or unsubstantiated charges." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 497 (D.N.J. 2014) (internal citations omitted). Plaintiff must allege the date, time, and place of the alleged fraud, who made the alleged fraudulent statement, and the substance of the alleged statement. *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

When multiple defendants are accused of fraud, this particularity requirement applies to each one separately. *Jubelt v. United N. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227, at *9 (D.N.J. June 30, 2015) (internal citations omitted). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

---

[13] *See, e.g.*, *Sani-Pure Food Labs., LLC v. bioMerieux, Inc.*, Civil Action No. 13-6643 (ES), 2014 WL 6386803, at *4-*5 (D.N.J. Nov. 13, 2014) (applying Rule 9(b) to fraud and negligent misrepresentation claims); *GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA,* Civil Action No. 09-4656 (JLL), 2010 WL 2179094, at *5 (D.N.J. May 26, 2010) (applying Rule 9(b) to fraud in the inducement claim); *Roll v. Singh*, Civil Action No. 07-cv-04136 (FLW), 2008 WL 3413863, at *4, *22 (D.N.J. June 26, 2008) (applying Rule 9(b) to breach of fiduciary duty claim and securities fraud claim).

Discover has not alleged any particulars regarding the supposed fraudulent conduct by any Defendant, and has instead resorted to vague, generalized allegations of group conduct. *See, e.g.,* Am. Compl., ¶ 58 ("*Immune and its officers and directors* represented to Discover that Immune had good, marketable and indefeasible title to all of the Collateral, including the Bert family of assets identified in the IP Security Agreement, and that Immune could pledge the Collateral to Discover to secure amounts due under the Debt Documents.") (emphasis added); *id.,* ¶ 59 ("Moreover, *Immune and its officers and directors* represented to Discover that the pledge of the Collateral under the Debt Documents would not violate or cause a default under Immune's obligations to third parties.") (emphasis added). Indeed, in many instances, the Amended Complaint alleges that the supposedly fraudulent representations were made by Immune, not Defendants. *See, e.g.*, *id.*, ¶ 64 ("*Immune's* representations in the Debt Documents that it had good, marketable and indefeasible title to all of the Collateral were false when made" (emphasis added); *id.*, ¶ 32 ("[i]n the Agreement, *Immune* represented and warranted as follows: <u>No Conflicts</u> . . .") (emphasis added); *id.*, ¶ 33 ("*Immune* also represented and warranted to Discover: <u>Patents and Trademarks</u>. . . .") (emphasis added).

These pleading deficiencies require dismissal of all fraud-based claims. Indeed, some allegations in the Amended Complaint refute any fraud by Defendants. First, as set forth above, any representations were made by Immune. Second, it cannot be disputed that Immune Sub was the counterparty to the Sublicense Agreement with iCo. This information was publicly available, including in Immune's SEC filings. Discover, as a sophisticated investor whose affiliates had previously invested in Immune should have known these facts or learned them in due diligence.

In addition, there are no facts alleged that establish any Defendants intended to defraud Discover. The Agreement expressly provides that it was the product of arm's-length negotiations

of the parties.  *See* Agreement, § III.A.12(d) ("Investor is acting solely in the capacity of arm's length purchaser with respect to this Agreement and the transactions contemplated hereby . . .). The Amended Complaint further acknowledges that there was no intent to defraud: "*[I]n approving the pledge of the Collateral to Discover and the Debt Documents' representations regarding its ownership, the directors and officers . . .* **relied upon emails from Teper from some years earlier to the effect that, because Immune owned all of the stock of [Immune Sub], Immune could pledge the [Immune Sub].-owned Collateral to a secured lender.**"  Am. Compl., ¶ 66 (emphasis added).  In other words, Discover alleges that Defendants relied on representations of Discover's founder, which negates any inference that Defendants intended to mislead Discover.

### III.   DISCOVER'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS DID NOT OWE DISCOVER ANY DUTY TO DISCLOSE INFORMATION.

Discover's claims center around the allegation that the "Defendants knew that certain of the assets were titled in [Immune Sub], and failed to disclose that fact to Discover."  Am. Compl., ¶ 71.  It is well established that Discover can only bring this omission-based claim where Defendants had an independent duty to disclose this information.  No such duty exists here.

"[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'"  *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 602-03 (D.N.J. 2016) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993)).  Similarly, a plaintiff may not bring an omission-based negligent misrepresentation claim "unless the breaching party owes [him or her] an independent duty imposed by law" requiring disclosure.  *Henderson v. Volvo Cars of N. Am., LLC,* Civ. No. 09-4146 (DMC)(JAD), 2010 WL 2925913, at *11 (D. N.J. July 21, 2010) (quoting *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297,

315, 788 A.2d 268 (2002)).  With respect to a securities fraud claim, "[a] defendant cannot be held

liable for failure to disclose unless plaintiff first demonstrates that defendant, indeed had a duty to

disclose."  *In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529, 543 (D.N.J. 2002) (citing

*Basic, Inc. v. Levinson,* 485 U.S. 224, 239 n. 17, 108 S. Ct. 978, 99 L. E. 2d 194 (1988) ("Silence,

absent a duty to disclose, is not misleading under Rule 10b-5.")).

> A duty to disclose arises under New Jersey law:

> (1) when there is a fiduciary relationship between the parties; (2) when one party
> expressly reposits trust in another party, or else from the circumstances, such trust
> necessarily is implied; and (3) when the relationship involving the transaction is 'so
> intrinsically fiduciary that a degree of trust and confidence is required to protect the
> parties,' for example, an insurance contract.

*Argabright,* 201 F. Supp. 3d at 602 (citing *Lightning Lube,* 4 F.3d at 1185).

Accordingly, courts routinely dismiss fraud and negligent misrepresentation claims based

on an omission where the parties entered into an arm's length transaction because there is no

independent duty requiring disclosure.  *See, e.g.*, *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F.

Supp. 2d 370, 397 (D.N.J. 2007) *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007) (concluding that

"[t]he arm's length negotiation of a contract between two corporations . . . does not fall within the

narrow circumstances giving rise to such a duty to disclose under New Jersey law."); *Alin v. Am.*

*Honda Motor Co., Inc.*, No. 08-4825 (KSH), 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010)

(dismissing negligent misrepresentation claim where parties entered into arm's length contract);

*United Jersey Bank v. Kensey*, 306 N.J. Super 540, 553-58, 704 A.2d 38 (App. Div. 1997) (noting

"a general presumption that the relationship between lenders and borrowers is conducted at arms-

length, and the parties are each acting in their own interest" and affirming dismissal of fraud claim

where no special circumstances were present); *see also New Jersey Econ. Dev. Auth. v. Pavonia*

*Rest., Inc.*, 319 N.J. Super. 435, 446, 725 A.2d 1133, 1138-39 (App. Div. 1998) ("Indeed, as a

general proposition, creditor-debtor relationships rarely give rise to a fiduciary duty inasmuch as their respective positions are essentially adversarial.  Further, where information is equally available to both parties, neither party has a duty to disclose that information to the other.") (internal citations omitted).

Here, Discover has alleged that the Defendants "failed to disclose that certain of the Collateral was claimed to be owned by [Immune Sub]." Am. Compl., ¶ 71.  In particular, Discover claims that "[t]he Director and Officer Defendants knew that certain of the assets were titled in [Immune Sub], and failed to disclose that fact to Discover." *Id.*  However, since Defendants had no independent duty requiring disclosure, Discover's fraud, fraud in the inducement, negligent misrepresentation and securities fraud claims should be dismissed.

## IV.   DISCOVER'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED.

### A.   Discover Cannot Allege Defendants Owed It a Fiduciary Duty.

The internal affairs doctrine serves as a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Krys v. Aaron*, 106 F. Supp. 3d 472, 484 (D.N.J. 2015) (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S. Ct. 2629, 73 L. Ed .2d 269 (1982)).  New Jersey courts adhere to this doctrine, and direct that "the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citation omitted); *see also North Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 515 F. App'x 176, 182 n.14 (3d Cir. 2013) ("Although New Jersey law governs [plaintiff's] claims generally . . . Delaware law governs the internal affairs of a Delaware entity.").  Breach of fiduciary duty claims involve the "internal

affairs" of a corporation. *See Fry v. Trump*, 681 F. Supp. 252, 255-56 (D.N.J. 1988) ("Claims involving the 'internal affairs' of corporations, such as breach of fiduciary duty and the like, are subject to the laws of the state of incorporation."). Accordingly, since Immune is a Delaware corporation, Delaware law will govern such claims.

Under Delaware law, the elements of a fiduciary duty claim are "(1) that the fiduciary duty exists and (2) that the fiduciary breached that duty." *In re Tropicana Entertainment, LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014) (quoting *York Lingings v. Roach,* No. 16622-NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999)). "For a fiduciary duty to exist, there must first be a fiduciary relationship." *Id.*

Discover alleges that Defendants owed Discover fiduciary duties by virtue of their position of control over Immune and, as to Fiorino, by virtue of his position as President and CEO of Immune. *See* Am. Compl., ¶¶ 110-11. Discover also alleges that Defendants owed it an "enhanced duty of care as Immune entered the 'zone of insolvency' in early 2018 or before." *Id.*, ¶ 73.

These allegations have no support in Delaware law. At the time of the alleged misrepresentations, Discover and Immune were engaged in arm's-length negotiations of the Agreement, and Discover was not yet a creditor of Immune. Generally, "[a] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another." *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 901 A.2d 106, 113 (Del. 2006) (citation omitted). Where, as here, the parties were dealing at arm's length, such business transaction does not create a fiduciary relationship. "Equity distinguishes fiduciary relationships from straightforward commercial arrangements where there is no expectation that one party will act in the interests of the other." *Auriga Capital Corp. v. Gatz Props.,* 40 A.3d 839, 850 (Del. Ch. 2012), *aff'd sub nom. Gatz Props., LLC v. Auriga Capital*

*Corp.*, 59 A.3d 1206 (Del. 2012) (citing *AIG Life Ins. Co.*, 901 A.2d at 114 (agreeing with the court below that "it is vitally important that the exacting standards of fiduciary duties not be extended to quotidian commercial relationships . . . .") (citation omitted); *McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987) (relationship between landlord and tenant was wholly contractual and not fiduciary); *Prestancia Mgmt. Group, Inc. v. Va. Heritage Found., II LLC*, No. Civ. A. 1032-S, 2005 WL 1364616, at *6 (Del.Ch. May 27, 2005) (real estate investment contract between Prestancia and the defendant "was a bargained-for commercial relationship between sophisticated parties . . . that [did] not give rise to fiduciary duties."); *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL 409015, at *2–3 (Del. Ch. July 5, 1995) (relationship established by two commercial contracts was not fiduciary).

### B. Discover Lacks Standing to Bring a Breach of Fiduciary Duty Claim.

An independent basis for dismissing the breach of fiduciary duty claim is lack of standing. Under Delaware law, while creditors of an insolvent corporation may have standing to bring derivative suits against corporate directors for breaches of fiduciary duties, "individual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007) (emphasis in original); *see also Acacia Invs., B.S.C.(C) v. W. End Equity I, Ltd.*, 161709/2018, 2020 WL 809721, at *9 (N.Y. Sup. Ct. Feb. 18, 2020) (dismissing claim for director liability because "under Delaware law (*Gheewalla*), there simply cannot be a direct claim for breach of fiduciary duty by a creditor in this action."). Generally, determining whether a claim is derivative or direct "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *In re G-I*

*Holdings, Inc.*, 755 F.3d 195, 208 (3d Cir. 2014) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)) (emphasis in original).

As to the first question, Discover alleges that the harm from the supposed breaches were causes to Discover, not to Immune.  *See* Am. Compl., ¶ 90 ("Due to Immune's, and thus the Director and Officer Defendants' misrepresentations and failure to perform adequate due diligence, and the Director and Officer Defendants' other wrongful acts, Discover [is] unlikely to realize any material recovery from the proceeds of its Collateral that have been paid to the Israeli Trustee, and the value of Bert was impaired due to iCo's Termination of the License.").

As to the second question, Discover seeks recovery for itself only, not for Immune's shareholders.  *See id.*, ¶ 114 ("As a direct and proximate result of the Director and Officer Defendants breaches of their fiduciary duties to Discover, Discover suffered substantial damages. WHEREFORE, Plaintiff demands judgment against the Director and Officer Defendants and the Rabin Estate, individually, jointly and severally, for compensatory and punitive damages, interest, attorneys' fees, costs of suit and such other and further relief as is equitable and just.").  Therefore, Discover's claims are direct claims which Discover is prohibited from asserting under Delaware law.

Further, derivative claims could only be asserted in the Chapter 7 cases by the chapter 7 trustee.  *See, e.g., In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006), *subsequently aff'd*, 359 F. App'x 352 (3d Cir. 2010) ("Upon the filing of a bankruptcy petition . . . claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee.") (citing *Mitchell Excavators Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984); *see also Skolnick v. Atlantic Gulf Communities Corp.*

*(In re Gen. Development Corp.*), 179 B.R. 335, 338 (S.D. Fla. 1995) ("[t]he bankruptcy estate includes all legal claims owned by [the] corporate debtor, including derivative actions brought by shareholders.")).   Accordingly, Discover does not have standing to bring any breach of fiduciary duty claims, whether styled as direct or derivative claims.

**C.    The Breach of Fiduciary Duty Claims Fail Because Immune's Certificate of Incorporation Eliminated Fiduciary Duties.**

The certificate of incorporation (the "Certificate of Incorporation") of Immune (f/k/a EpiCept Corporation) contains an exculpatory clause, eliminating liability for the breach of fiduciary duty claims asserted by Discover.  *See* Certificate of Incorporation, Article Sixth, Section 1, attached to the Jureller Decl. as Exhibit M.  ("Indemnification.  To the fullest extent permitted by the [General Corporation Law of the State of Delaware], a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty as a director.").[14]  Under Section 102(b)(7) of the Delaware General Corporate Law, a certificate of incorporation may contain a provision limiting or eliminating personal financial liability of a director to the corporation or its shareholders.[15]

---

[14] The Court may take judicial notice of the Certificate of Incorporation in deciding the motion to dismiss.  *See In re SFBC Int'l, Inc. Sec. & Derivative Litig.*, 495 F. Supp. 2d 477, 487 n. 4 (D.N.J. 2007).

[15] Section 102(b)(7) of the Delaware General Corporate Law allows:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

8 Del. C. § 102(b)(7).

At the motion to dismiss stage, courts have accepted exculpatory clauses as a valid defense for directors to breach of duty of care claims. *See, e.g.*, *Continuing Creditors' Comm. of Star Telecommunications, Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 464 (D. Del. 2004); *In re USDigital, Inc.*, 443 B.R. 22, 43-44 (Bankr. D. Del. 2011); *In re Midway Games Inc.*, 428 B.R. 303, 317 (Bankr. D. Del. 2010).

Here, Discover's claims sound in breach of care, in that they allege Defendants violated a duty to act on an "informed basis". *In re USDigital, Inc.*, 443 B.R. at 41 (citations omitted). Specifically, Discover alleges that "[b]y failing to conduct independent due diligence . . . and . . . relying, upon, *inter alia*, Teper's years' old advice, the Director and Officer Defendants negligently and/or knowingly disregarded their duties and engaged in irrational decision making in order to induce Discover to advance funding to Immune." Am. Compl., ¶ 113. Discover cannot attempt to turn the duty of care claims into bad faith claims to escape the consequences of the exculpatory provision.

## V.   THE BANKRUPTCY COURT'S ORDER APPROVING THE CEPLENE LICENSE BARS THE TORTIOUS INTERFERENCE CLAIM ON RES JUDICATA AND COLLATERAL ESTOPPEL GROUNDS.

Unhappy with the Bankruptcy Court's License Approval Order which excluded the Ceplene Assets from Discover's lien, Discover now blames Teper and Rabin for interfering with Discover's contractual rights and attempting to relitigate issues that the Bankruptcy Court has already ruled upon. Discover is barred by the doctrines of res judicata and collateral estoppel from collaterally attacking the License Approval Order.[16]

---

[16] "Although res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under FED. R. CIV. P. 12(b)(6)." *Walzer v. Muriel, Siebert & Co., Inc.*, 221 Fed. Appx. 153, 155 (3d Cir. 2007) (citations omitted).

Res judicata, or claim preclusion, bars a party from initiating a second suit against the same adversary based on the same cause of action as the first suit. *See Duhaney v. Attorney General of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). Res judicata applies where there is: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* Res judicia also bars claims that could have been brought in the first action. *Id.*

A party seeking to invoke collateral estoppel, or issue preclusion, must establish the following elements:

> (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.

*Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002) (citation omitted).

As a result, Discover is barred from litigating here both claims that were raised before the Bankruptcy Court and claims that could have been raised before the Bankruptcy Court. In order to approve the Ceplene License, the Bankruptcy Court had to consider Discover's "strenuous opposition," which "strenuous opposition" Discover is asserting before this Court.

In *In re Farmland Indus., Inc*., the Bankruptcy Court for the Western District of Missouri found that the unsuccessful bidder at an auction sale was collaterally estopped from bringing a claim of tortious interference against the successful bidder and others who allegedly conspired with it during the sale process because the unsuccessful bidder was "seeking to undo the economics of the sale by seeking damages" against the successful bidder and others. 376 B.R. 718, 726 (Bankr. W.D. Mo. 2007) *aff'd* 408 B.R. 497 (B.A.P. 8th Cir. 2009). The Bankruptcy Appellate

Panel for the Eighth Circuit affirmed on several grounds, including collateral estoppel, finding that the issues presented in the tortious interference action were the same as those that had already been litigated and determined by the bankruptcy court. *In re Farmland Indus., Inc.*, 408 B.R. 497, 507-08 (B.A.P. 8th Cir. 2009) *aff'd* 639 F.3d 402 (8th Cir. 2011). The same logic applies here.

As part of the License Approval Order, the Bankruptcy Court decided the issue of whether the Ceplene License qualified as a Ceplene Transaction (as defined in the Agreement). By approving the Ceplene License nunc pro tunc to March 30, 2019, Immune closed on a Ceplene Transaction. *See* Am. Compl., ¶ 124. Discover admits that it submitted a "strenuous objection" to the License Approval Motion, "pointing out Teper's and thus Vector's insider status and the need for the Bankruptcy Court to closely scrutinize the proposed sale." *Id.*, ¶ 126. The Bankruptcy Court did scrutinize the proposed transaction and ultimately decided against Discover and approved Immune's entry into the Ceplene License. The very gist of Discover's claim is that the Ceplene License should not have been approved and Discover should have a lien on the Ceplene Assets. Discover is thus asking this Court to ignore the Bankruptcy Court's License Approval Order and its findings therein and allow it to relitigate the same issue with a different adversary. That is precisely what res judicata and collateral estoppel are designed to protect against.

## VI. DISCOVER'S SECURITIES FRAUD CLAIM SHOULD BE DISMISSED ON STANDING AND RIPENESS GROUNDS.

A complaint was filed against Discover by, among others, Immune in the Bankruptcy Cases, Adv. Pro. No. 19-02033-VFP (the "Adversary Proceeding"). Am. Compl., ¶ 133. In the Adversary Proceeding, the plaintiffs seek subordination of Discover's claim. *Id.*, ¶ 134. Based on this, Discover alleges that "*in the event* the Bankruptcy Court sustains [plaintiffs] flawed theory and recharacterizes Discover's debt claims as equity interests, the Director and Officer Defendants will have committed securities fraud . . . ." *Id.*, ¶ 136 (emphasis added).

Section 10(b) of the Securities Exchange Act of 1934 prohibits the "use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . ."  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under Section 10(b), makes it unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240. 10b-5(b).  To state a valid claim under Section 10(b) and Rule 10b-5, Discover must show that the Defendants "(1) made a misstatement or an omission of a material fact (2) with scienter (3) *in connection with a purchase or the sale of a security* (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury."  *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002) (citations omitted) (emphasis added).

Discover acknowledges that it would have standing to assert a securities fraud claim *only if* the Bankruptcy Court recharacterizes Discover's debt claims against Immune as equity.  *See* Am. Compl., ¶ 137 ("If Discover's debt claims against Immune are recharacterized as equity, then Discover will be a purchaser of a security and have standing to assert a SEC Rule 10b-5 claim.");  *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S. Ct. 1917, 1923, 44 L. Ed. 2d 539 (1975) (holding that standing to bring a private cause of action under Rule 10b-5 is limited to actual purchasers or sellers of *securities*).

Based on the foregoing, Discover's securities fraud claims should be dismissed pursuant to Rule 12(b)(1)[17] for lack of subject matter jurisdiction because (i) Discover lacks standing to

---

[17] The standard of review under Rule 12(b)(1) is different from the standard of review under Rule 12(b)(6).  *See Medical Society of New Jersey v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[,] its very power to

assert a securities fraud claim and (ii) such claim is not ripe for adjudication.  *See, e.g.*, *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259, 140 L.Ed. 2d 406 (1998) (holding claim is not ripe for adjudication if the claim rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (citations omitted); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) ("Standing is a jurisdictional matter.  Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.") (internal quotations omitted); *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) ("The existence of a case and controversy is a perquisite to all federal actions . . . . One aspect of justiciability is ripeness, which determines when a proper party may bring an action.") (internal quotation marks and citations omitted).

## VII.   ALL CLAIMS AGAINST DEFENDANT TEPER SHOULD BE DISMISSED BECAUSE HE WAS NOT A DIRECTOR OR OFFICER AT THE TIME OF THE EVENTS AT ISSUE.

Since its founding in 2010 until April 2017, Teper served as a Director and the President and CEO of Immune, at which time he became CEO of Cytovia, Inc., a subsidiary of Immune, and remained a director of Immune until resigning from both positions in May 2018.  The Agreement and related documents were not entered into until October 2018.  None of the fraudulent conduct Discover has alleged in the Amended Complaint occurred while Teper was an officer or director of Immune.  Accordingly, all claims against Teper, in his position as an officer or director of Immune, must be dismissed.

---

hear the case[,] . . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . Thus, the court may proceed in a way it cannot under Rules 12(b)(6) and 56; moreover, no presumptive truthfulness attaches to plaintiff's allegations of jurisdictional facts.") (internal citations and quotations omitted).

## **CONCLUSION**

For all the foregoing reasons, Discover has not asserted any viable causes of action against Defendants.   Accordingly, all claims in the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       April 8, 2020

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ John E. Jureller, Jr.*
John E. Jureller, Jr.
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, NY 10036
Tel:  (212) 972-3000
Fax:  (212) 972-2245
jjureller@klestadt.com
lkiss@klestadt.com

*Attorneys for Defendants Anthony Fiorino, M.D., Daniel Teper, M.D., Jeffrey Paley, M.D., John Neczesny and Daniel Kazado*