UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISCOVER GROWTH FUND, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>ANTHONY FIORINO, M.D.; DANIEL KAZADO; DANIEL TEPER, M.D.; JEFFREY PALEY, M.D.; JOHN NECZESNY; THE ESTATE OF GARY H. RABIN; and JOHN DOE 1-10 and JANE DOE 1-10,<br><br>  Defendants. | Civil Action No. 2:20-cv-00351 (CCC) (MF) |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S CORRECTED AMENDED COMPLAINT**

---

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
John E. Jureller, Jr.
Lauren C. Kiss

*Attorneys for Defendants Anthony Fiorino, M.D.,
Daniel Teper, M.D., Jeffrey Paley, M.D.,
John Neczesny and Daniel Kazado*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

REPLY .....................................................................................................................................2

    I.      Discover Has Not and Cannot Allege Reasonable Reliance because a Reasonable Investigation would have Revealed Immune Sub's Ownership of Bert ........................2

    II.     The Defendants are Not Personally Liable for Immune's Alleged Breach of Contract Claims ..........................................................................................6

    III.    Defendants Made No Representations in the Financing Documents Requiring Further Disclosure ....................................................7

    IV.    This is Not the "Unusual" Case that Overcomes the Presumptive Application of Delaware Law in Accordance with the Internal Affairs Doctrine .........8

    V.     The Bankruptcy Court's Reasoning Behind the License Approval Order is Irrelevant ...........................................................9

    VI.    It is Not in the Interests of Judicial Economy to Allow the Securities Fraud Claim to Proceed ..........................................................................10

    VII.   Claims against Teper Must be Dismissed ...................................................................10

CONCLUSION......................................................................................................................11

# **TABLE OF AUTHORITIES**

*Cases:*

*Andrea v. Metro Life Ins. Co.*,
   No. 2:00-CV-911, 2000 WL 35361960 (D.N.J. Aug. 14, 2000) ..............................................5

*Davis v. Bankers Life and Casualty Co.*,
   Civil Action No. 15-3559 (ES) (JAD)*, 2016 WL 7668452 (D.N.J. Dec. 23, 2016) ................5

*Heronemus v. Ulrick*,
   No. CIV.A.97C-03-168-JOH, 1997 WL 524127 (Del. Super. Ct. July 9, 1997)  .................6,7

*In re Innovation Fuels, Inc.*, 2013 WL 3835827 (Bankr. D.N.J. July 22, 2013) ............................9

*Intarome Fragrance & Flavor Corp. v. Zarkades,*
   Civ. No. 07-873 (DRD), 2009 WL 931036 (D.N.J. Mar. 30, 2009) ......................................8,9

*Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447 (D.N.J. 2015) ......................................................3

*RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436 (D.N.J. 2012) ............................3

*Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 788 A.2d 268 (2002) .............................................6

Defendants Anthony Fiorino, M.D. ("Fiorino"), Daniel Teper, M.D. ("Teper"), Jeffrey Paley, M.D. ("Paley"), John Neczesny ("Neczesny") and Daniel Kazado ("Kazado") (Fiorino, Teper, Paley, Neczesny, and Kazado together, the "Defendants")[1] respectfully submit this memorandum of law in reply to the Brief of Discover Growth Fund, LLC in Opposition to Defendants' Motion to Dismiss (the "Opposition") and in further support of Defendants' motion to dismiss Discover Growth Fund, LLC's Amended Complaint.[2]

## PRELIMINARY STATEMENT

The Opposition has not, *and cannot*, fix the fatal deficiencies in Discover's claims against Defendants in the Amended Complaint—in particular that there is no plausible claim against these former director and officers of Immune for Discover's own failure to learn for itself that the Bert patents were not owned by Immune and thus were not Collateral under the Agreement.

As set forth in the Motion, it is undisputed that Schedule A to the IP Security Agreement specifically identifies that the Bert patents and/or patent applications were *owned* by Immune Sub, and that the Sublicense Agreement was between iCo and Immune Sub.  In an effort to salvage its claims, Discover now improperly asks this Court (a) to review hundreds of pages of deposition transcripts, (b) to base its determination on the Motion upon alleged, non-particularized statements by certain Defendants notwithstanding the actual terms of the Agreement, and (c) to read alternative reasons for the Bankruptcy Court's decisions, which were made over Discover's strenuous objections.  These desperate arguments are legally insufficient to plead any plausible claims against Defendants.

---

[1] To date, the Estate of Gary Rabin has not yet been served with the Amended Complaint.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Defendants Memorandum of Law in Support of Their Motion to Dismiss Discover Growth Fund, LLC's Corrected Amended Complaint [Docket No. 10-1].

Discover's various claims in this action hinge upon a single question: During the due diligence process, was it reasonable for Discover to assume that the rights to Bert were owned by Immune and thus part of the Collateral securing Discover's financing to Immune? The answer is "No," and as such Discover's entire action against the Defendants fails. But, even if the answer were "Yes," Discover would have nothing more than a breach of contract claim against Immune for any alleged losses on financing provided to Immune. As officers and directors of Immune, none of the Defendants is personally liable for Immune's contractual breaches.

Discover's Opposition confirms that its claims against Immune's officers and directors are not viable. Discover admits that that it relied on alleged oral statements made by Fiorino and Rabin concerning "the value of Immune's intellectual property, particularly Bert." Opposition, p. 16. Discover admits that its "reasonable investigation" consisted of only "direct communication between Discover and Immune, by way of Kirkland, Fiorino and Rabin." *Id.* p.18. Discover admits that all actions were taken by Defendants on behalf of Immune. *Id.* p. 22. These admissions confirm that Discover failed to conduct a reasonable investigation before entering into the financing transaction with Immune, and that its claims are ultimately seeking relief for breach of contract. Further, Discover still has not identified any alleged statement by Paley, Neczesny or Kazado to Discover about Bert, let alone a statement that could support Discover's claims. Discover's Amended Complaint should be dismissed.

## **REPLY**

I.  **Discover Has Not and Cannot Allege Reasonable Reliance because a Reasonable Investigation would have Revealed Immune Sub's Ownership of Bert**

Repetition does not create a fact. No matter how many times Discover states that it was allegedly told that Immune owned Bert, the Court cannot find that Discover reasonably relied on the alleged misrepresentations made by Defendants. The Opposition emphasizes the seven-week

2

negotiation between Immune and Discover in connection with the financing transaction and the following purported oral statements made by certain of Defendants: (i) "Fiorino repeatedly assured Kirkland that the value of Bert was tens of millions of dollars, and would both provide a source of repayment for the loan under the Debenture and more than adequate security" (*Id.* p. 17); (ii) "[t]he Officers repeatedly touted the value of Immune's intellectual property, particularly Bert, which was characterized as Immune's most valuable asset") (*Id.* p. 18); and (iii) "Fiorino repeatedly advised Kirkland that Bert was the most important component of Discover's collateral") (*Id.* p. 16). Discover then absurdly claims that "Fiorino and Rabin pressured Discover to accept their misrepresentations concerning Immune's ownership of, *inter alia*, the entirety of Bert." *Id.* This argument fails for the following reasons.

First, the alleged oral statements of potential future value or worth referenced above are mere puffery and cannot form the basis for any alleged misrepresentations. *See Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 457 (D.N.J. 2015) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. [S]tatements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." (internal citations and quotations omitted). Even if these statements were actually made, a sophisticated investor such as Discover must know that statements regarding potential value of an asset are subjective and must be confirmed; yet Discover admits that it made no such reasonable diligence.

Second, the parol evidence rule prohibits the introduction of evidence of oral statements to revise the terms of an integrated written agreement. *See RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454 (D.N.J. 2012) (dismissing fraudulent inducement claims after finding that misrepresentations were inadmissible under the integration clause and parol evidence

rule).  Here, the Agreement contains the following standard integration provision which provides that the Agreement supersedes all prior oral representations:

> <u>Entire Agreement</u>.  This Agreement, including the Exhibits hereto, which are hereby incorporated by reference, contains the entire agreement and understanding of the parties, and supersedes all prior and contemporaneous agreements, terms sheets, letters, discussions, communications and understandings, both oral and written, which the parties acknowledge have been merged into this Agreement.  No party, representative, advisor, attorney or agent has relied upon any collateral contract, agreement, assurance, promise, understanding, statement or representation not expressly set forth herein.  The parties hereby absolutely, unconditionally and irrevocably waive all rights and remedies, at law and in equity, directly or indirectly arising out of or relating to, or which may arise as a result of, any Person's reliance on any such statement or assurance.

*See* Agreement, Section Q.

As a result, Discover cannot rely on purported oral statements by certain Defendants to alter the contract's terms. The Agreement contains provisions granting Discover a first-priority security interest in all of *Immune's* assets, other than all tangible and intangible assets associated with Ceplene.  The Agreement did not specify a security interest in Bert, nor did it provide for a lien on any of the assets of Immune Sub or any other Immune affiliate.  Moreover, the IP Security Agreement was attached as Exhibit 8 to the Agreement.  Discover cannot dispute that it was on notice of Immune Sub's ownership of the Bert patents because the IP Security Agreement references certain "patents and patent applications filed under Immune Pharma Ltd (Owner)". While Discover attempts to argue that "'*filed under'* Ltd. – hardly constitutes disclosure that those patents were *owned by* Ltd." (Opposition, p. 21), Discover conveniently omits the word "Owner", which could not be a clearer indication that Immune Sub was the "Owner" of the Bert patents. Further, the Sublicense Agreement provides additional evidence of Immune Sub's ownership of

Bert.³  Whether or not Discover actually reviewed the Sublicense Agreement publicly available in Immune's 2014 10-K filing is irrelevant.  What is relevant is that Discover states that it believed that Bert was Immune's most valuable asset, worth millions of dollars, and formed the basis for its financing to Immune.  Any reasonable lender would have confirmed this understanding before entering into a financing transaction.  Upon a review of the IP Security Agreement and Sublicense Agreement, a reasonable lender would have learned that Immune did not have the rights to Bert.

Third, the Opposition does not even argue that Paley, Neczesny or Kazado made any representations to Discover concerning Bert or the Collateral.  In the absence of such a representation, all of the claims against these Defendants should be dismissed.

Finally, contrary to Discover's argument that "Discover's pre-execution due diligence is a question of fact not appropriately decided in response to a motion to dismiss" (Opposition, p. 19), courts routinely dismiss claims where, as here, reasonable reliance cannot be established under any set of facts.  *See, e.g., Davis v. Bankers Life and Casualty Co.,* Civil Action No. 15-3559 (ES) (JAD)*,* 2016 WL 7668452, at *6 (D.N.J. Dec. 23, 2016) (dismissing fraud claims with prejudice after concluding that plaintiff could not establish reasonable reliance because "reasonable reliance on a prior oral representation cannot be established in the face of clear contradictory language in an insurance policy"); *Andrea v. Metro Life Ins. Co.,* No. 2:00-CV-911, 2000 WL 35361960, at *14 (D.N.J. Aug. 14, 2000) (dismissing fraud claim with prejudice after concluding that plaintiffs could not establish that they reasonably relied on representations from one of defendant's sales

---

³ Discover's claims continue to rely upon its allegations that the iCo Sublicense Agreement was terminated; however, the undisputed facts contradict this allegation.  First, the iCo Sublicense Agreement was between iCo and Immune Sub, not Immune.  Second, any attempted termination by iCo was admittedly improper and/or barred by the automatic stay.  Third, the iCo Sublicense Agreement was assumed and assigned in the Bankruptcy Cases and was an integral part of the sale of the Anti-Eotaxin Assets to Alexion as approved by the Bankruptcy Court's Order dated October 21, 2019. *See* Exhibit D to Jureller Decl. [Docket No. 10-6].

representative in light of the clear contradictory language of the policy). Given that, under no set of facts, can the Court find Defendants liable for the claims asserted in the Amended Complaint, Discover should not be given the ability to re-plead. Such action would be futile.

  II.   **The Defendants are Not Personally Liable for Immune's Alleged Breach of Contract Claims**

None of the parties dispute the existence of a valid contract between *Immune* and Discover. However, Discover's attempt to convert what is quintessentially a breach of contract action against *Immune* into an assortment of tort claims against the *Defendants* by alleging that the Defendants "elected to speak by causing Immune to make the misrepresentations in the Debt Documents" (Opposition, p. 25) because "corporations can only act through their directors and officers" (*Id.* p. 22) has no legal support. *Immune's* alleged breach of that contract claims cannot give rise to personal liability against Defendants. To do so would ignore the corporate form and overturn one of the purposes for incorporation – to eliminate personal liability.

Further, neither New Jersey nor Delaware law allow for personal liability of a corporate officer or director acting in such capacity in a case such as this. Under both the participation theory in New Jersey and the participation doctrine in Delaware, officers or directors of a corporation can be liable only for intentional torts committed by the corporation, and not for actions rooted in contract law. *See, e.g., Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 309, 788 A.2d 268, 275–76 (2002) ("Whatever may be the appropriate standard for limiting corporate officers' liability under the participation theory, the essential predicate for application of the theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff. If, however, the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable."); *Heronemus v. Ulrick*, No. CIV.A.97C-03-168-JOH, 1997 WL 524127,

at *1 (Del. Super. Ct. July 9, 1997) ("As a general rule, so far as personal liability on corporation contracts is concerned, officers of corporations are . . . not liable on corporate contracts as long as they do not act and purport to bind themselves individually.").

For that reason, Discover's speculation about whether it was reasonable for Defendants to rely on Teper's email related to the Collateral is irrelevant.[4]  In the absence of a representation from Defendants to Discover, there is no legal theory that would make them liable to Discover simply because they allegedly failed to investigate more closely whether Immune's representations to Discover in the Debt Documents (as defined in the Opposition) were accurate.

### III. Defendants Made No Representations in the Financing Documents Requiring Further Disclosure

Discover confirms in its Opposition that the alleged misrepresentations asserted in the Amended Complaint were contained in the "Debt Documents" – documents consisting of, among other things, the Agreement and IP Security Agreement between *Immune* and Discover.  *See* Opposition, p. 24 ("Discover alleges that the Debt Documents contain misrepresentations concerning the ownership of Bert and a warranty that providing Discover with a security interest in Immune's assets would not trigger a default under any of Discover's other contracts.").  Since it was *Immune* who with a party to the Debt Documents with Discover, any purported obligation to disclose fell on Immune, not Defendants.

In any case, none of the Debt Documents provide for a lien on any of the assets of Immune Sub.  The Agreement did not specify a security interest in Bert and the IP Security Agreement expressly provided that the rights to the Bert patents were owned by Immune Sub.  Accordingly,

---

[4] Discover fails to mention that Immune was represented by counsel in the transaction and negotiations of the Debt Documents, including Lowenstein Sandler LLP and Pearl Cohen.

the Amended Complaint cannot state any misleading or inaccurate statement for *Immune* to correct.

In addition, there is no evidence that Immune's representations to Discover that the pledge of the Collateral would not violate or cause a default under Immune's obligations to third parties was untrue. As explained in Defendants' moving brief, allegations that iCo terminated the Sublicense Agreement as a result of Immune's grant of its rights under the Sublicense Agreement are inaccurate. The Bankruptcy Court ultimately approved Immune's and its affiliated Debtors' motion to sell certain assets, which included the assignment of the rights under the Sublicense Agreement with the consent of iCo. *See* Exhibit D to Jureller Decl. [Docket No. 10-6]. The Sublicense Agreement could not have been assumed and assigned as part of the sale transaction if it had been terminated prepetition by iCo.

## IV. This is Not the "Unusual" Case that Overcomes the Presumptive Application of Delaware Law in Accordance with the Internal Affairs Doctrine

Desperately looking for some hook to save its claim, Discover contends that, under a choice of law analysis, New Jersey law has the most significant relationship to the facts underlying Discover's claim, and, therefore, New Jersey law applies to the breach of fiduciary duty claims. *See* Opposition, pp. 26-29. To apply New Jersey law would ignore the internal affairs doctrine. It would impose an impossible standard on corporate officers and directors subjecting them to conflicting demands and require them to learn the fiduciary duty laws in all jurisdictions where their companies do business. This flies in the face of the internal affairs doctrine. A director needs to know what his or her duties are, with certainty. Accordingly, the internal affairs doctrine should be applied, except in the unusual case where another state has a more significant relationship to the occurrence and the parties, in which case the local law of the other state will apply. *See Intarome Fragrance & Flavor Corp. v. Zarkades,* Civ. No. 07-873 (DRD), 2009 WL 931036, at

*14 (D.N.J. Mar. 30, 2009). With Delaware, the Virgin Islands, New Jersey, California, Israel, and New York all having some relationship to the occurrence and the parties, this is not the unusual case to overcome the presumption of the internal affairs doctrine. *See In re Innovation Fuels, Inc.*, 2013 WL 3835827, at *6 (Bankr. D.N.J. July 22, 2013) ("Considering the number of states holding a possible interest in the resolution of the issues and the intangible nature of the cause of action and harm, efficient resolution favors application of the general rule: the Court's application of the law of the state of incorporation"). Delaware law, as the state of incorporation, applies, and the breach of fiduciary duty claims must be dismissed.

V. **The Bankruptcy Court's Reasoning Behind the License Approval Order is Irrelevant**

Discover's proffered reinterpretations of the Bankruptcy Court's orders are immaterial for purposes of this motion. As part of the License Approval Order, the Bankruptcy Court decided the issue of whether the Ceplene License qualified as a Ceplene Transaction (as defined in the Agreement). Contrary to Discover's arguments, the reasoning behind the Bankruptcy Court's decision is irrelevant. What matters is that, by approving the Ceplene License *nunc pro tunc* to March 30, 2019, Immune closed on a Ceplene Transaction. *See* Am. Compl., ¶ 124. This meant that Ceplene was not subject to Discover's security interest. Discover could have appealed the License Approval Order, but chose not to. Moreover, Discover incorrectly claims that the Bankruptcy Court could not have adjudicated all of the issues relevant to Discover's claim for tortious interference because some of the facts underlying the claim occurred after the Bankruptcy Court's License Approval Order. However, it is clear that Discover's allegations subsequent to the entry of the License Approval Order are the same allegations that Discover set forth in the Priority Lien Motion and Discover Opposition, which were considered and rejected by the Bankruptcy Court before entering the License Approval Order.

### VI. It is Not in the Interests of Judicial Economy to Allow the Securities Fraud Claim to Proceed

Discover admits that it lacks standing to prosecute its securities fraud claim at the current time but requests that this claim be permitted to proceed in the interests of judicial economy. *See* Opposition, p. 32. Judicial economy is not served by the continued prosecution of a claim that is contingent upon future events that may not occur.

### VII. Claims against Teper Must be Dismissed

The Opposition admits that the sole claim against Teper is the tortious interference claim. *See* Opposition, p. 31. Further, the Opposition does not refute that Teper was neither an officer or director of Immune at the time Immune and Discover entered into the Agreement. Teper had previously terminated his relationship with Immune. The tortious interference claim relates solely to the Ceplene License and License Approval Order discussed above. As such, any claim against Teper has no merit, is barred by collateral estoppel and res judicata, and is not plausible. The Opposition does not provide any argument or basis to hold otherwise.

[*Continued on Next Page*]

**CONCLUSION**

For all the foregoing reasons, Discover has not asserted any viable causes of action against Defendants. Accordingly, all claims in the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
June 11, 2020

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ John E. Jureller, Jr.*
John E. Jureller, Jr.
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
jjureller@klestadt.com
lkiss@klestadt.com

*Attorneys for Defendants Anthony Fiorino, M.D., Daniel Teper, M.D., Jeffrey Paley, M.D., John Neczesny and Daniel Kazado*
